**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4017-23

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

RICOTSON A. DOLISCA,

      Defendant-Appellant.

_____

Argued June 2, 2026 – Decided July 14, 2026

Before Judges Gilson, Firko and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 22-04-0796.

Frank J. Pugliese, Designated Counsel, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Frank J. Pugliese, on the briefs).

Hannah Faye Kurt, Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens, II, Essex County Prosecutor, attorney; Hannah Faye Kurt, of counsel and on the brief).

Appellant filed supplemental briefs on appellant's behalf.

PER CURIAM

Defendant Ricotson A. Dolisca and two co-defendants, Gary Rhymes and Mark Willis, were charged with robbing a man, N.V. (Norm),[1] at a fast-food store. A jury convicted defendant of second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2(a)(1) and N.J.S.A. 2C:15-1(a)(1); third-degree receiving stolen property, N.J.S.A. 2C:20-7(a); second-degree unlawful possession of a weapon—a firearm, N.J.S.A. 2C:39-5(b)(1); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); and fourth-degree possession of an unlawful device, namely a large capacity ammunition magazine, N.J.S.A. 2C:39-3(j). Defendant was sentenced to fourteen years' imprisonment subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

Defendant appeals from his conviction and sentence. For the reasons that follow, we affirm.

I.

The pertinent facts are summarized from our opinion in State v. Rhymes, No. A-1726-23 (App. Div. May 9, 2025) (slip op. at 1-21), and the trial record.

---

[1] We use initials and a fictitious name for the victim to protect his privacy interests. R. 1:38-3(c).

On the evening of January 19, 2022, Norm was in Irvington at Chicken Shack, a small store that sold takeout chicken. Id. at 2. As Norm was standing in the store, three men entered. Defendant asked Norm to "give[] something up." In response, Norm told defendant he had no money. Id. at 3. Norm attempted to pay the sum through Cash App but was unable to do so because he was "spending too much money" on his account.

The robbery was captured on video footage taken by a surveillance camera in the store. Ibid. The video, which had no audio, was played for the jury. Norm described what the video depicted. Ibid. While narrating the video, Norm identified himself. In the courtroom, Norm pointed to defendant and Rhymes and identified them as being involved in the incident. Ibid. Norm testified that defendant was wearing a black jacket and had red headphones on his head in the video. Ibid. Norm stated he was familiar with defendant and that defendant had texted him the day before asking for money defendant believed Norm owed him. Ibid.

The video showed defendant standing in front of Norm, and he appeared to be talking to Norm for a while. Ibid. Defendant demanded and took Norm's cell phone and wallet, which contained his credit card, social security card, cash-out card, and his ABT card. Norm testified that defendant told him he had a gun

3

and instructed him to remove his outer clothing.  Id. at 4.  Norm explained he removed his jacket, hoodie, pants, and sneakers.  At that point, defendant pointed a gun at Norm's foot and slapped him in the face multiple times before leaving.

After the three men left the store, Norm called his father and then he called the police.  Ibid.  Two police officers responded and searched the surrounding area.  Norm provided the officers with descriptions of the three men.  At trial, Norm testified he was familiar with defendant because the day prior, he had texted Norm requesting to be paid back money he allegedly owed defendant. One officer testified he was driving to Chicken Shack and saw three men who matched Norm's description "to a tee."  Ibid.  At a show-up identification, Norm positively identified all three suspects as the individuals involved in the incident. All three men were arrested and later identified as defendant, Rhymes, and Willis.  Following a search while in custody, Norm's cell phone and wallet were found in defendant's jacket pocket.  Ibid.  Nothing was recovered from Rhymes or Willis.  Norm's clothing was recovered on the sidewalk.

The three defendants were tried together.  At the close of the State's case, the court denied defendant's motion for a judgment of acquittal on the third-degree receiving stolen property charge.  In response to a motion filed by

Rhymes's counsel, the court conducted a Sands/Brunson[2] hearing on whether the State could use Rhymes's two prior convictions if he decided to testify.  The State sought to introduce evidence of Rhymes's 2007 conviction for third-degree possession of a controlled dangerous substance and a 2011 conviction for third-degree aggravated assault.  The court ruled both of Rhymes's prior convictions would be admissible as impeachment evidence if Rhymes decided to testify. Rhymes, slip op. at 5.  Consequently, Rhymes chose not to testify at trial.

We reversed Rhymes's convictions and remanded for further proceedings. Id. at 2, 21. We held Rhymes's two prior convictions were more than ten years ago and should have been barred from admission or use at trial.  Id. at 13. Defendant's counsel did not request a Sands/Brunson hearing.  Defendant did not testify at trial and did not present any evidence.

The jury convicted defendant of all the charges.  After merger, defendant was sentenced to fourteen years' imprisonment subject to NERA on the first-degree robbery conviction.  All remaining convictions were ordered to be served concurrently.  This appeal followed.

---

[2] Trial courts hold a Sands/Brunson hearing "[w]hen deciding whether to admit a witness's prior conviction."  State v. Higgs, 253 N.J. 333, 368 (2023) (first citing State v. Sands, 76 N.J. 127, 385 (1978); and then citing State v. Brunson, 132 N.J. 377 (1993)).

A-4017-23

Defendant's counseled brief raises the following points for our consideration:

POINT I

IN THE PRESENT MATTER, THE COURT'S INSTRUCTION ON THE OFFENSE OF ROBBERY WAS DEFICIENT. THE COURT FAILED TO TAILOR THE INSTRUCTION TO THE FACTS OF THE CASE. THE COURT'S FAILURE TO DO SO DEPRIVED DEFENDANT OF HIS RIGHT TO A FAIR TRIAL. (Not Raised Below)

POINT II

DEFENSE COUNSEL'S FAILURE TO MOVE TO EXCLUDE USE OF DEFENDANT'S PRIOR CONVICTION FOR IMPEACHMENT PURPOSES CONSTITUTES INEFFECTIVE ASSISTANCE OF COUNSEL. (Not Raised Below)

POINT III

THE COURT ERRED IN DENYING DEFENDANT'S MOTION AT THE END OF THE STATE'S CASE TO DISMISS THE CHARGE OF RECEIVING STOLEN PROPERTY. (Raised Below)

POINT IV

ALTERNATIVELY, THE COURT ERRED IN FAILING TO INSTRUCT THE JURY ON THE CLAIM OF RIGHT DEFENSE TO THE CHARGE OF RECEIVING STOLEN PROPERTY. (Raised Below)

6

POINT V

THE CUMULATIVE IMPACT OF THE ERRORS
DENIED DEFENDANT A FAIR TRIAL. (Partially
Raised Below)

POINT VI

THE COURT ERRED IN NOT FINDING
MITIGATING FACTOR [SEVEN] RESULTING IN
THE IMPOSITION OF AN EXCESSIVE SENTENCE.
(Raised Below)

In his self-authored brief, defendant raises the following points:

POINT I

THE STATE'S USE OF A POLICE REPORT TO
SECURE INDICTMENT, FOLLOWED BY THE
FAILURE TO PRESENT THE AUTHOR AT TRIAL,
VIOLATED DUE PROCESS.

POINT II

THE ADMISSION OF A POLICE REPORT
WITHOUT LIVE TESTIMONY VIOLATED
DEFENDANT'S RIGHTS UNDER THE
CONFRONTATION CLAUSE.

POINT III

TRIAL COURT ERRED IN ADMITTING VIDEO
EVIDENCE WITHOUT PROPER
AUTHENTICATION UNDER N.J.R.E. 104 AND THE
ERROR WAS NOT HARMLESS BECAUSE THE
VIDEO WAS CENTRAL TO THE PROSECUTION'S
CASE.

7

A-4017-23

POINT IV

THE DENIAL OF STATUTORY REMEDY UNDER
N.J.S.A. 40A:14-118.5(g) "REBUTTABLE
PRESUMPTION" DURING THE SUPPRESSION
HEARING DEPRIVED DEFENDANT OF A
FOUNDATIONALLY CONSTITUTIONAL
ELEMENT OF FAIRNESS GUARANTEED IN OUR
CRIMINAL JUSTICE PROCESS.

POINT V

THE TRIAL COURT VIOLATED DEFENDANT'S
RIGHT TO A FAIR TRIAL BY CONDUCTING
EVIDENTIARY MOTIONS ON THE SAME DAY AS
TRIAL, EFFECTIVELY DENYING THE DEFENSE
A MEANINGFUL OPPORTUNITY TO PREPARE.

POINT VI

THE SENTENCING COURT ABUSED ITS
DISCRETION BY IMPOSING A
DISPROPORTIONATE AND EXCESSIVE
SENTENCE ON DEFENDANT, CONTRARY TO
THE PRINCIPLES OF THE NEW JERSEY CODE OF
CRIMINAL JUSTICE AND IN VIOLATION OF
EQUAL PROTECTION AND DUE PROCESS
GUARANTEES.

In his self-authored reply brief, defendant raises the following points:

POINT I

ACCEPTING A MINIMAL DESCRIPTIVE BASIS OF
"BLACK JACKET" AND "WHITE SNEAKERS" AS
SUFFICIENT FOR A STOP OPENS THE DOOR TO
RACIAL PROFILING AND UNCONSTITUTIONAL

SEARCHES; EVIDENCE DERIVED FROM THE STOP MUST BE SUPPRESSED.

POINT II

THE . . . COURT IMPROPERLY APPLIED THE BEST EVIDENCE RULE TO ADMIT THE UNAUTHENTICATED VIDEO EVIDENCE IN VIOLATION OF THE RULES OF EVIDENCE, PREJUDICING . . . DEFENDANT.

POINT III

THE COURT IMPROPERLY SHIFTED THE BURDEN OF PROOF TO . . . DEFENDANT.

POINT IV

THE COMBINATION OF CUMULATIVE ERRORS AND INTENTIONAL VIOLATIONS RESULTED IN A FUNDAMENTALLY UNFAIR TRIAL.

II.

"Appropriate and proper jury instructions are essential for a fair trial." State v. A.L.A., 251 N.J. 580, 591 (2022). A jury charge must "'correctly state the applicable law, outline the jury's function[,] and be clear in how the jury should apply the legal principles charged to the facts of the case at hand.'" Ibid. (quoting Est. of Kotsovska v. Liebman, 221 N.J. 568, 591 (2015)). Moreover, jury charges should be tailored to the specific facts of the case. See State v.

A-4017-23

<u>Savage</u>, 172 N.J. 374, 389 (2002) (noting that New Jersey courts "regularly have noted the importance of tailoring the jury charge to the facts of the case").

Appellate courts "review for plain error the trial court's obligation to sua sponte deliver a jury instruction when a defendant does not request it and fails to object at trial to its omission." <u>State v. Alexander</u>, 233 N.J. 132, 141-42 (2018) (citing <u>State v. Cole</u>, 229 N.J. 430, 455 (2017)). "To warrant reversal, the unchallenged error must have been 'clearly capable of producing an unjust result.'" <u>Id.</u> at 142 (quoting <u>R.</u> 2:10-2). "The mere possibility of an unjust result is not enough." <u>State v. Funderburg</u>, 225 N.J. 66, 79 (2016). Instead, "[t]he possibility must be real, one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." <u>Alexander</u>, 233 N.J. at 142 (alteration in original) (quoting <u>State v. Macon</u>, 57 N.J. 325, 336 (1971)).

Defendant argues, for the first time on appeal, the court failed to instruct the jury on the definition of theft within the robbery charge and did not provide tailored guidance on the legal meaning of "deprive." Defendant contends the facts heard by the jury represented "an atypical robbery" given Norm's testimony where he acknowledged that at the time of the incident a monetary debt was owed to defendant. According to defendant, Norm's testimony that during the

incident, he attempted to transfer money to defendant through a banking app on his cell phone but could not due to insufficient funds supports his claim. Defendant maintains the robbery was also "atypical" because the store itself was not robbed nor were any of its patrons. These arguments are unpersuasive.

"To determine whether an alleged error rises to the level of plain error, it 'must be evaluated "in light of the overall strength of the State's case."'" State v. Clark, 251 N.J. 266, 287 (2022) (quoting State v. Sanchez-Medina, 231 N.J. 452, 468 (2018)). "The 'high standard' used in plain error analysis 'provides a strong incentive for counsel to interpose a timely objection, enabling the trial court to forestall or correct a potential error.'" State v. Burnham, 474 N.J. Super. 226, 230 (App. Div. 2022) (quoting Santamaria, 236 N.J. at 404).

Here, the court gave the following jury instruction on robbery:

> A person is guilty of robbery if, in the course of committing a theft, he:
>
> (a) Knowingly inflicts bodily injury or uses force upon another, or;
>
> (b) Threatens another with or purposely puts him in fear of immediate bodily injury.
>
> In order for you to find the defendant guilty of robbery, the State is required to prove each of the following elements beyond a reasonable doubt:

11

(1) That the defendant was in the course of committing a <u>theft</u>, and;

(2) That while in the course of committing that <u>theft</u>, the defendant knowingly inflicted bodily injury or used force upon another, or threatened another with or purposely put him in fear of immediate bodily injury.

. . . .

Theft is defined as the unlawful taking, or exercise of unlawful control over the property of another <u>with the purpose to deprive him thereof.</u>

[(Emphasis added).]

Defendant asserts that the jury instructions were deficient because they did not: (1) include the required elements for proving theft beyond a reasonable doubt; or (2) define the legal meaning of "deprive." In support of his argument, defendant cites to the model jury instruction for theft:

A person is guilty of theft if he unlawfully takes, or exercises control over movable property of another <u>with purpose to deprive him thereof</u>.

In order for you to find defendant guilty of this offense, the State must prove the following elements beyond a reasonable doubt:

(1)   That defendant knowingly took or unlawfully exercised control over movable property;

(2)   That the movable property was property of another;

12

(3)  That the movable property was taken from the person of another; and

(4)  That defendant's <u>purpose was to deprive the other person of the movable property</u>.

[<u>Model Jury Charges (Criminal)</u>, "Theft From The Person (N.J.S.A. 2C:20-2b(2)(d))" (approved April 15, 2013) (emphasis added).]

The model jury instruction defines the fourth element:

The fourth element that the State must prove beyond a reasonable doubt is that defendant's purpose was to deprive the other person of the movable property. Deprive means (1) to withhold or cause to be withheld property of another permanently or for so extended a period as to appropriate a substantial portion of its economic value[,] or with purpose to restore only upon payment of reward or other compensation or (2) to dispose or cause disposal of the property so as to make it unlikely that the owner will recover it.

[<u>Ibid.</u>]

Defendant urges there was no testimony presented at trial to prove his purpose was to deprive Norm of his property or keep it as his own. Had the jury been instructed on the term "deprive," defendant contends the jury may have concluded "he had no intention of permanently making the property his own" and consequently "there was no theft," citing <u>State v. Farrad</u>, 164 N.J. 247, 257 (2000). Because there was no testimony that Norm was injured, defendant posits the facts only support fourth-degree offense of aggravated assault, defined as,

13

"point[ing] a firearm . . . at or in the direction of another."  N.J.S.A. 2C:12-1(b)(4).

Considered in light of the evidence produced at trial and the overall strength of the State's case, defendant's claim that the court inadequately instructed the jury on the definition and elements of robbery is unconvincing and does not constitute plain error.  Moreover, the model jury charge for robbery instructs the court to use N.J.S.A. 2C:20-3, instead of N.J.S.A. 2C:20-2(b)(2)(d), for the definition of theft.  Model Jury Charges (Criminal), "Robbery in the First Degree, (N.J.S.A. 2C:15-1)" (rev. Sept. 9, 2012).  Further, the court's definition of theft almost identically matched the one provided in the model jury instruction.  Thus, there is no basis for us to find plain error.  R. 2:10-2.

### III.

We turn to defendant's contention that defense counsel's failure to move to exclude use of defendant's prior conviction for impeachment purposes constitutes ineffective assistance of counsel.  According to defendant, had defense counsel requested a Sands/Brunson hearing pre-trial, his single third-degree prior conviction, which was more than ten years old at the start of trial,

14

would have been inadmissible to impeach him under N.J.R.E. 609(a) and (b).[3] Defendant claims he would have then testified, and the jury would have heard his "account of the events" on the surveillance video since the dialogue with Norm could not be heard. Defendant avers had he testified, the jury would have considered his proffered testimony that the property he took from Norm was intended to be "collateral" upon payment of the debt Norm owed him, citing State v. Hedgespeth, 249 N.J. 234, 251-53 (2021).

To establish a claim of ineffective assistance of counsel, the defendant must show (1) the particular manner in which counsel's performance was deficient, and (2) that the deficiency prejudiced his right to a fair trial. Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 58 (1987). There is a strong presumption counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. The deficient performance prong requires a showing counsel failed "to make the adversarial testing process work," and thus was not functioning as the "counsel" guaranteed by the Sixth

---

[3] N.J.R.E. permits use of the "witness's conviction of a crime, subject to [N.J.R.E.] 403," "[f]or the purpose of attacking the credibility of any witness." N.J.R.E. 609(a)(1). However, the use of a prior conviction is "subject to [N.J.R.E.] 403" and "shall be admitted unless excluded by the court pursuant to paragraph (b) of this rule." Ibid.

Amendment. Strickland, 466 U.S. at 687, 690; Fritz, 105 N.J. at 58. As to the second element, prejudice is not presumed, Fritz, 105 N.J. at 52, and the defendant must demonstrate "how specific errors of counsel undermined the reliability" of the proceeding. United States v. Cronic, 466 U.S. 648, 659 n.26 (1984).

We decline to address this issue on the basis that it is more proper for a petition for post-conviction relief (PCR). "Our courts have expressed a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." State v. Preciose, 129 N.J. 451, 460 (1992); see also State v. Sparano, 249 N.J. Super. 411, 419 (App. Div. 1991) ("Generally, a claim of ineffective assistance of counsel cannot be raised on direct appeal."). The more appropriate forum to raise such claims is in a petition for PCR where an adequate, reviewable record can be developed. State v. Miller, 216 N.J. 40, 70 n.7 (2013).

IV.

Next, defendant contends the court erred in denying his motion for a judgment of acquittal at the end of the State's case on the receiving stolen property charge. R. 3:18-1; State v. Reyes, 50 N.J. 454, 458-59 (1967). Under

16

Rule 3:18-1, the trial court "'is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the State.'" State v. Papasavvas, 170 N.J. 462, 521 (2002) (quoting State v. Kluber, 130 N.J. Super. 336, 342 (App. Div. 1974), certif. denied, 67 N.J. 72 (1975)). "If the evidence satisfies that standard, the motion must be denied." State v. Spivey, 179 N.J. 229, 236 (2004).

We review a denial of a motion for a judgment of acquittal de novo. State v. Williams, 218 N.J. 576, 593-94 (2014). The motion must be denied "if 'viewing [only] the State's evidence in its entirety, be that evidence direct or circumstantial,' and giving the State the benefit of all reasonable inferences, 'a reasonable jury could find guilt . . . beyond a reasonable doubt.'" State v. Sugar, 240 N.J. Super. 148, 152 (App. Div. 1990) (alteration in original) (quoting Reyes, 50 N.J. at 458-59); see also State v. Perez, 177 N.J. 540, 549 (2003) ("When evaluating motions to acquit based on insufficient evidence, courts must view the totality of evidence . . . in a light most favorable to the State.").

Defendant was charged with receiving stolen property under N.J.S.A. 2C:20-7(a), which provides: "A person is guilty of theft if he knowingly receives or brings into this State movable property . . . of another knowing that

17

it has been stolen, or believing that it is probably stolen." The model jury charge for this offense states:

> (1) That the defendant knowingly received . . . movable property of another;
>
> (2) That the property was stolen; and
>
> (3) That the defendant either <u>knew that the property had been stolen or believed that it had probably been stolen at the time he/she received the property</u>.
>
> [<u>Model Jury Charges (Criminal)</u>, "Receiving Stolen Property (N.J.S.A. 2C:20-7(a))" (rev. Mar. 21, 2005) (emphasis added).]

Defendant asserts the State failed to present any evidence in support of the second and third elements of the charge of receiving stolen property. In order to prove the second element, defendant maintains the State was required to prove beyond a reasonable doubt that the property he "received" from Norm was "stolen property," citing <u>State v. Hodde</u>, 181 N.J. 375 (2004). Defendant similarly contends the State presented no evidence to satisfy the third element of receiving stolen property because there was no proof defendant knew Norm's property had been stolen or believed it had been stolen at the time he took possession. The State counters that not only was the property stolen, but defendant "also obviously knew it was stolen since he was the person who stole it."

In Hodde, defendant was found in possession of a truck the day after it was reported stolen. The jury heard testimony at trial that the defendant told the police the truck was not stolen but was an overdue lease. 181 N.J. at 377-78. The Hodde Court reversed the conviction and remanded for a new trial holding: "when the State prosecutes a defendant for receipt of stolen property under N.J.S.A. 2C:20-7, it must prove that the property involved was actually stolen." Hodde, 181 N.J. at 384.

Here, in contrast to Hodde, the court properly instructed the jury that they were required to find the property defendant took from Norm was stolen property and clearly instructed the jury on all three elements contained in N.J.S.A. 2C:20-7(a). Based upon our de novo review, we discern no error.

Given the totality of the evidence, the Reyes standard was met. The competent evidence at trial showed defendant was the one who took Norm's property, which establishes it was stolen property. Norm positively identified defendant at a show-up identification, on the surveillance video, and at trial. Saliently, defendant was found in possession of Norm's wallet and cell phone. Thus, Hodde is inapposite to the well-grounded facts established in the matter under review that defendant knowingly received property of another. Therefore,

19

we conclude defendant's motion for acquittal on the receiving stolen property charge was properly denied.

V.

We also reject defendant's alternate argument that the court erred in failing to instruct the jury on the claim of right defense. Defendant asserts that during the charge conference, his trial counsel requested a claim of right defense charge specifically "with respect to interest to restore the stolen items." The court denied defendant's request stating, "[t]hat's not even in the case," and "[e]ven if it were considered collateral . . . that's assuming you're taking the law into your own hands in order to enforce some sort of an agreement. That's really not a defense here."

Defendant argues the court erred because Norm's testimony indicated otherwise when he testified:

> [Defense Counsel]: During these discussions, did you ever promise the individuals in that video . . .?
>
>    . . . .
>
> [Defense Counsel]: that you would return with the money owed?
>
> [Norm]: No.
>
> [Defense Counsel]: So some of those items weren't collateral?

20

[Norm]: What you mean some of those items . . .

[Defense Counsel]: They'd hold it and then you come back.

[Norm]: Oh, no, no. . . . They tried to pull that off, but the cops gave me all that stuff back. But I ain't never promised to give nobody nothing.

Given Norm's testimony, defendant maintains there was evidence in the record regarding his intent "to give the property back," and therefore, it was plain error for the court to deny his request for a claim of right instruction. Defendant claims this defense was presented during his trial counsel's summation to the jury and through Norm's testimony suggested he did not owe a debt to defendant, but Norm's friend owed him the debt instead. We are unpersuaded.

The claim of right defense is a defense to the charge of receiving stolen property:

> It is an affirmative defense to prosecution for theft that the actor:
>
> (1) Was unaware that the property or service was that of another;
>
> (2) Acted under an honest claim of right to the property or service involved or that he had a right to acquire or dispose of it as he did; . . .
>
> [N.J.S.A 2C:20-2(c) (emphasis added).]

21

The claim of right charge should be given only when there is some evidence that would support it. N.J.S.A. 2C:1-13(b)(1); see State v. Ippolito, 287 N.J. Super. 375, 382 n.1 (App. Div. 1996).

Norm testified he "never promised to give nobody nothing." The record is devoid of any testimony supporting defendant's contention that Norm agreed defendant could hold his personal property until another's debt was paid. Defendant threatened Norm with a gun, slapped him, and took his personal property. Nothing in the record justifies the jury charge of claim of right as a defense.

V.

We are unpersuaded by defendant's claim that he is entitled to a new trial based on cumulative error. "'A defendant is entitled to a fair trial[,] but not a perfect one.'" State v. Weaver, 219 N.J. 131, 155 (2014) (quoting State v. Wakefield, 190 N.J. 397, 537 (2007)). However, "[w]hen legal errors cumulatively render a trial unfair, the Constitution requires a new trial." Ibid.

The State's case was strong, and to the extent there were errors made during the lengthy trial, they did not deprive defendant of his right to a fair trial. Based on our review of the whole trial record, we are satisfied there is no basis to reverse defendant's conviction based on cumulative error.

Finally, in his counseled brief, defendant contends that his fourteen-year sentence, with a period of parole ineligibility as prescribed by NERA, should be vacated because the court failed to apply and weigh mitigating factor seven. We disagree.

We review sentencing decisions for a "clear showing of abuse of discretion." State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Whitaker, 79 N.J. 503, 512 (1979)). We will affirm a trial court's sentence unless: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based on competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

Mitigating factor seven states: "[t]he defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense." N.J.S.A 2C:44-1(b)(7). Here, the court found that mitigating factor seven did not apply based on defendant's criminal history, which included one prior indictable conviction, and one disorderly person's conviction. The court noted defendant's criminal

history was "not extensive." However, defendant's last conviction was in 2016, with a disposition date of 2018, only four years before the subject offenses. Accordingly, the court properly rejected mitigating factor seven.

A review of the record establishes that the court assessed the aggravating and mitigating factors and made findings, which are supported by the record. In that regard, the court found aggravating factors three ("the risk that the defendant will commit another offense."), N.J.S.A. 2C:44-1(a)(3); and nine ("the need for deterring the defendant and others from violating the law."), N.J.S.A. 2C:44-1(a)(9).

The court found mitigating factors eight ("the defendant's conduct was the result of circumstances unlikely to recur."), N.J.S.A. 2C:44-1(b)(8); nine ("the character and attitude of the defendant indicate that the defendant is unlikely to commit another offense."), N.J.S.A. 2C:44-1(b)(9); and eleven ("the imprisonment of the defendant would entail excessive hardship to the defendant or the defendant's dependents."), N.J.S.A. 2C:44-1(b)(11). The court went on to state the reasons for finding these factors and the weight it attached to each factor. Those findings are all supported by the evidence in the record.

The court then followed the sentencing guidelines, and the sentence imposed does not shock the judicial conscience. Accordingly, there is no basis to find that defendant's sentence was excessive or erroneous.

VII.

We now turn to the arguments raised in defendant's self-authored briefs.

A.

Defendant first argues the State relied on a police report authored by Patrolman David Dort to "secure" an indictment before a grand jury but did not call him to testify at trial. Defendant contends his rights under the Confrontation Clause contained in the Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution were violated. Additionally, defendant claims he was deprived of a meaningful opportunity to challenge central evidence used to prosecute him.

Under Article I, Paragraph 8 of the New Jersey Constitution "[n]o person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury." The grand jury "operates as both a sword and shield[,]" State v. Shaw, 241 N.J. 223, 235 (2020), by "bring[ing] to trial those who are probably guilty" and "clear[ing] the innocent of baseless charges." In re Grand Jury Appearance Request by Loigman, 183 N.J. 133, 138 (2005). To

25

that end, grand juries "serve a dual purpose: to determine if probable cause exists and to 'stand[] between the defendant and the power of the State' and protect 'defendant[s] from unfounded prosecutions.'" Shaw, 241 N.J. at 238 (alterations in original). Accordingly, "[t]he grand jury has always occupied a high place as an instrument of justice in our system of criminal law." State v. Del Fino, 100 N.J. 154, 165 (1985).

To issue an indictment, a grand jury must be presented with sufficient evidence, viewed in the light most favorable to the State, establishing a prima facie case as to each crime. State v. Hogan, 144 N.J. 216, 227 (1996). In establishing a prima facie case, "the State may not deceive the grand jury or present its evidence in a way that is tantamount to telling the grand jury a 'half truth.'" Id. at 236.

"Once a grand jury returns an indictment, a court should dismiss that indictment 'only on the clearest and plainest ground, and only when the indictment is manifestly deficient or palpably defective.'" State v. Bell, 241 N.J. 552, 560 (2020) (quoting State v. Twiggs, 233 N.J. 513, 531-32 (2108)). Dismissal of an indictment is a "last resort because the public interest, the rights of victims and the integrity of the criminal justice system are at stake." State v.

Williams, 441 N.J. Super. 266, 272 (App. Div. 2015) (quoting State v. Ruffin, 371 N.J. Super. 371, 384 (App. Div. 2004)).

We have long recognized that an indictment may be based largely or wholly upon hearsay testimony. State v. Ferrante, 111 N.J. Super. 299, 304-05 (App. Div. 1970). "[A]n indictment may be based largely or wholly on hearsay and other evidence which may not be legally competent or admissible at the plenary trial . . . ." State v. Holsten, 223 N.J. Super. 578, 585 (App. Div. 1988) (quoting State v. Schmidt, 213 N.J. Super. 576, 584 (App. Div. 1986)), rev'd on other grounds, 110 N.J. 258 (1988). Moreover, an indictment need not be dismissed where hearsay or even "highly prejudicial" evidence has been presented to the grand jury where the grand jury process itself has not been shown to be unfair. State v. Scherzer, 301 N.J. Super. 363, 428-29 (App. Div. 1997).

Defendant cites to Napue v. Illinois, 360 U.S. 264 (1959) for the proposition that the State must correct or supplement the record when the author of a report introduced into evidence is unavailable to testify. He also cites State v. Roach, 219 N.J. 58 (2014), where our Supreme Court held a non-testifying lab technician's report was inadmissible in accordance with Crawford v. Washington, 541 U.S. 36 (2004). Defendant maintains his confrontation rights

were violated during the grand jury proceeding, because he was not permitted an opportunity to cross-examine the author of the report regarding the statements made within it. Defendant argues the police report contains hearsay, and no hearsay exception is applicable here. We are unpersuaded.

The grand jury was permitted to base its indictment against defendant "largely or wholly" on hearsay testimony. Holsten, 223 N.J. Super. at 585 (quoting Schmidt, 213 N.J. Super. at 584). There was sufficient evidence to support the facts contained in the police report, the investigating officers' statements, and the surveillance footage. Moreover, defendant never moved to dismiss all of the charges in the indictment; he moved only to dismiss the charge of receiving stolen property.

There was sufficient evidence presented to the grand jury to support the facts presented in the police report, which included the victim's testimony, the officers' testimony, and the video surveillance footage. Moreover, the police report specifically states the three defendants were standing in front of a street "fitting the description of the possible robbery suspects." The record establishes that the officer who described the facts in the police report "had personal knowledge" or "experience" of the occurrence to render the hearsay reliable. State v. Vasky, 218 N.J. Super. 487, 491 (App. Div. 1987). And, the police

report specifically notes, although authored by Dort, that multiple officers "canvassed the area in an unmarked police vehicle [looking] for the suspects."

We also reject defendant's Confrontation Clause claim as the protections under the Sixth Amendment do not apply to grand jury proceedings. See United States v. Burke, 345 F.3d 416, 425 (6th Cir. 2003) (quoting Barber v. Page, 390 U.S. 719, 725 (1968)) ("[T]he Supreme Court has repeatedly explained that '[t]he right to confrontation is basically a trial right.'"); see N.J. Const. art. I, ¶ 10 ("In all criminal prosecutions the accused shall have the right . . . to be confronted with the witnesses against him."); U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.").

B.

For similar reasons, defendant's argument that use of the police report at trial without live testimony from Dort is unavailing. Defendant reiterates the court's use of Dort's "out-of-court testimonial statements" without permitting defense counsel the opportunity to cross-examine him is a violation of defendant's confrontation rights under Crawford, 541 U.S. at 53-54, 124, requiring reversal.

29

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution both provide that the accused in a criminal trial has the right to confront the witnesses against him or her. U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10. "[T]he Confrontation Clause of the United States Constitution bars the 'admission of testimonial statements of a witness who did not appear at trial unless [(1)] he [or she] was unavailable to testify, and [(2)] the defendant had had a prior opportunity for cross-examination.'" State v. Slaughter, 219 N.J. 104, 116-17 (2014) (quoting Crawford, 541 U.S. at 53-54).

When a court determines whether a statement is "testimonial," it asks whether "'the primary purpose of the interrogation [wa]s to establish or prove past events potentially relevant to later criminal prosecution.'" State ex rel. J.A., 195 N.J. 324, 329 (2008) (quoting Davis v. Washington, 547 U.S. 813, 822 (2006)). "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." Davis, 547 U.S. at 822.

Here, the statements contained in the police report were nontestimonial because they were "made in the course of police interrogation under

A-4017-23

circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." Davis, 547 U.S. at 822. Thus, defendant's argument lacks merit.

C.

Next, defendant contends the State did not satisfy its burden of authenticating the surveillance video. Defendant asserts the "integrity" of the video was not established through individuals having "direct knowledge" of its "creation" or "content." Defendant argues the court allowed the State to "skirt out of its constitutional obligation" of proving authenticity of the video and "rather relied on perjured testimony of its own witness" instead of providing expert testimony of a "trained computer forensics" analyst. Defendant claims it was prejudicial for the court to have conducted an N.J.R.E. 104 hearing on the same day the video was played for the jury. Again, we are unpersuaded.

To be admissible, video footage must be authenticated by evidence sufficient to show that the video is what it purports to be. See N.J.R.E. 901. "Authentication 'does not require absolute certainty or conclusive proof[.]'" State v. Hannah, 448 N.J. Super. 78, 89 (App. Div. 2016) (quoting State v. Tormasi, 443 N.J. Super. 146, 155 (App. Div. 2015)). Instead, "only 'a prima facie showing of authenticity' is required." Ibid. "To that end, any person with

the requisite knowledge of the facts represented in the photograph or videotape may authenticate it." State v. Wilson, 135 N.J. 4, 14 (1994); accord State v. Hockett, 443 N.J. Super. 605, 613 (App. Div. 2016).

Generally, authentication of video footage requires testimony from an individual who was present at the time of the events and who states that the video "accurately depict[s] the events as that person saw them when they occurred." Wilson, 135 N.J. at 17 (citing Balian v. Gen. Motors, 121 N.J. Super. 118, 125 (App. Div. 1972)). Consequently, any witness with sufficient personal knowledge "can verify that the [video] accurately represents its subject." Id. at 14.

The decision on whether to admit video footage is an evidentiary question. Trial courts' "evidentiary rulings are 'entitled to deference absent a showing of an abuse of discretion, [that is], there has been a clear error of judgment.'" State v. Brown, 170 N.J. 138, 147 (2001) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)). We will, therefore, not substitute our own judgment for that of the trial court, "unless 'the trial court's ruling "was so wide of the mark that a manifest denial of justice resulted."'" Ibid.; accord State v. Prall, 231 N.J. 567, 580 (2018).

Here, we discern no abuse of discretion in the trial court's admission of the video footage. The court conducted a N.J.R.E. 104 hearing, and at that hearing, Detective Davon Anderson testified he received consent from a Chicken Shack employee to access its computers and the video security systems a few hours after the incident. The court determined that the video was in the "same condition" as when Detective Anderson reviewed it back on January 19, 2022, and accurately reflected the events that occurred that day. Consequently, the court appropriately authenticated the video footage.

D.

Defendant challenges the court's failure to apply a rebuttable presumption that the missing footage from the officers' body worn cameras (BWC) would have been exculpatory under N.J.S.A. 40A:14-118.5(q)(2). Defendant posits that all of the officers were "visibly" wearing BWCs on the day of the incident, however, "had the footage not been destroyed[,] it would have shown an entirely different picture" than the one depicted in the police reports. Defendant claims the police engaged in the "intentional" violation of his Fourth Amendment rights and acted in "bad faith" by approaching him "under the pretense of a field inquiry."

33

Under N.J.S.A. 40A:14-118.3(a), "every uniformed State, county, and municipal patrol law enforcement officer shall wear a [BWC] that electronically records audio and video while acting in the performance of the officer's official duties, except" in certain limited statutorily defined circumstances. The statutory framework requires that:

> the video and audio recording functions of a [BWC] shall be activated whenever the officer is responding to a call for service or at the initiation of any other law enforcement or investigative encounter between an officer and a member of the public, in accordance with applicable guidelines or directives promulgated by the Attorney General . . . . The [BWC] shall remain activated until the encounter has fully concluded and the officer leaves the scene.
>
> [N.J.S.A. 40A:14-118.5(c)(1).]

Under N.J.S.A. 40A:14-118.5(q)(2) to (3):

> If a law enforcement officer . . . fails to adhere to the recording . . . requirements . . . or intentionally interferes with a [BWC]'s ability to accurately capture audio or video recordings:
>
> . . . .
>
> there shall be a rebuttable presumption that evidence supporting the plaintiff's claim was destroyed or not captured in favor of . . . a law enforcement agency, or a law enforcement officer . . . based on police misconduct if the plaintiff reasonably asserts that evidence supporting the plaintiff's claim was destroyed or not captured.

Defendant contends that although a detective testified to being required to wear a BWC, he did not adhere to the statute—N.J.S.A. 40A:14-118.5(q), and therefore, there is no recording of the conversation he allegedly had with Chicken Shack's owner granting him access to the video surveillance. Because the detectives were not wearing BWCs, defendant argues the stop and frisk on the side of the road was unconstitutional. Citing Terry v. Ohio, 391 U.S. 1 (1968), defendant avers all fruits of the encounter, including the handgun retrieved from him, should be suppressed.

The officers here were admittedly not wearing BWCs. However, the unrefuted evidence presented at trial established the Terry stop was justified, and Officer James Dorval had an articulable, reasonable suspicion to stop defendant. Dorval testified as to the description of defendant and co-defendants from Officer Terrell Brown as he was driving to the scene. Dorval explained he saw three men who matched the description "to a tee," walking on the street approximately "seven doors" down from the Chicken Shack.

Moreover, defendant's attempt here to rely on the rebuttable presumption and "reasonably assert[] that exculpatory evidence was destroyed or not

captured," are unavailing. Relevant here, the July 28, 2015 BWC Directive[4]

states:

> Although BWCs record events accurately and objectively, they do not replace the need for complete and accurate police reports and testimony. The fact that a BWC is not activated to record an encounter or event does not, of course, preclude an officer from testifying as to the circumstances of the encounter or event, or affect the admissibility of evidence. Nor does it suggest that the officer's written report or testimony is inaccurate or incomplete. However, a BWC recording can supplement and corroborate the accuracy of written reports and testimony . . . .
>
> [BWC Directive, at 3, §1.2.]

This BWC Directive also states:

> Nothing in this Directive shall be construed in any way to create any promises or any rights beyond those established under the Constitutions, statutes, and regulations of the United States and the State of New Jersey. The provisions of this Directive are intended to be implemented and enforced by law enforcement agencies that deploy BWCs, and these provisions do not create any promises or rights that may be enforced by any other persons or entities.
>
> [Id. at 23, §15.]

---

[4] Off. of the Att'y Gen., Law Enf't Directive No. 2015-1, Law Enforcement Directive Regarding Police Body Worn Cameras (BWCs) and Stored BWC Recordings (July 28, 2015) [hereinafter BWC Directive].

The officers' BWC failures did not diminish their capacity. They made first-hand observations of defendant's actions. We have held that "the failure to comply with the BWC Directive does not constitute a constitutional violation." State v. Seligman, 480 N.J. Super. 509, 522 (App. Div. 2025), certif. denied, 260 NJ. 319 (2025). The BWC Directive's 2021 revision[5] added:

> If a law enforcement officer, employee, or agent fails to adhere to the recording or retention requirements contained in this [p]olicy, intentionally interferes with a BWC's ability to accurately capture audio or video recordings, or violates any other provision of this policy, the officer, employee, or agent shall be subject to appropriate disciplinary action, in addition to any judicial consequences outlined in the law.
>
> [Body Worn Camera Policy, at 26, §13.]

Defendant has not demonstrated that anyone affiliated with law enforcement "purposely or willfully destroyed" BWC footage. Indeed, there is no evidence in the record to suggest BWC footage existed, let alone was lost, suppressed, or destroyed in bad faith. Bad faith requires more than negligence; it requires a deliberate effort to deny a defendant access to exculpatory evidence. See State v. Peterkin, 226 N.J. Super. 25, 42-43 (App. Div. 1988). Thus, the

---

[5] Off. of the Att'y Gen., Law Enf't Directive No. 2021-5, Directive Revising Policy Regarding Use of Body Worn Cameras (BWCs) and Stored BWC Recordings (May 25, 2021) [hereinafter Body Worn Camera Policy].

presumption that exculpatory evidence was destroyed or not captured was overcome by the officers' credible testimony.

E.

Next, defendant contends the court's hearing and deciding evidentiary motions on the same day that trial commenced violated his constitutional right to a fair trial under the Fourteenth Amendment of the United States Constitution and Article 1, Paragraph 10 of the New Jersey Constitution. Citing Mathews v. Eldridge, 424 U.S. 319 (1976), defendant maintains due process requires a meaningful opportunity to be heard "at a meaningful time in a meaningful manner." Defendant argues the timing undermined the intent of Rule 3:10-1, which was implemented to avoid prejudice.

Courts have found that due process requirements are "flexible[,] and call[] for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). See Doe v. Poritz, 142 N.J. 1, 106 (1995) ("Due process is not a fixed concept, however, but a flexible one that depends on the particular circumstances."); Div. of Youth & Fam. Servs. v. M.Y.J.P., 360 N.J. Super. 426, 464 (App. Div. 2003) (finding there are no bright-line rules to judge the imposition of a particular procedure employed in a proceeding). Therefore, "not all situations calling for procedural safeguards call for the same

kind of procedure." Morrissey, 408 U.S. at 481. The question is "not whether particular procedures were used, but rather whether those procedures which were employed were appropriate and adequate to protect the interests at stake." M.Y.J.P., 360 N.J. Super. at 467-68.

Here, defendant fails to specify which evidentiary motions were decided on the day of trial or how he was prejudiced. Therefore, we decline to address this issue. See State v. L.D., 444 N.J. Super. 45, 56 n.7 (App. Div. 2016) ("[A]n issue not briefed is waived.").

To the extent we have not considered any of defendant's remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division